IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

OHIO VALLEY ENVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS CONSERVANCY,
WEST VIRGINIA RIVERS COALITION and
SIERRA CLUB,

                Plaintiffs,

v.                               CIVIL ACTION NO.   2:17-3013

FOLA COAL COMPANY, LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Fola Coal Company, LLC's ("Fola") Motion to Dismiss. ECF

No. 9. Fola argues that Plaintiffs' claims should be dismissed because the doctrine of *res judicata*

precludes them.[1] As explained below, the Court believes that Plaintiffs' claims present sufficient

---

[1] In both its initial Motion (ECF No. 9) and Memorandum in Support (ECF No. 10), Fola focused upon the subset of *res judicata* known as claim preclusion. *See Def.'s Mem. in Supp. of Mot. to Dismiss*, ECF No. 10, at 5-14 (referring to *res judicata* generally, and describing and applying the elements of claim preclusion solely). However, in its Reply, Fola argued that issue preclusion (also referred as "collateral estoppel"), another subset of *res judicata*, also required the dismissal of Plaintiffs' claims. *Reply*, ECF No. 13, at 5-9; *see also Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007) (providing that collateral estoppel and issue preclusion are synonymous, referring to the same legal concept). Agreeing with Plaintiffs that Fola had moved the target from the time of its original motion, the Court granted Plaintiffs' Motion to File a Surreply. *Order*, ECF No. 15; *see also Pls.' Mot. to File Surreply*, ECF No. 14.

Fola's overly broad terminology caused confusion in the briefing. However, the Court will consider both of Fola's arguments premised upon claim preclusion and issue preclusion. The Court finds that (1) in its original motion and supporting memorandum, Fola referred to the general concept of *res judicata*, which subsumes both claim and issue preclusion, *see First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996) ("The doctrine encompasses two concepts: claim preclusion and issue preclusion, or collateral estoppel."), and (2) Plaintiffs received an opportunity to respond to Fola's argument regarding issue preclusion.

differences from prior claims to prevent the application of either claim preclusion or issue preclusion. Consistent with that finding, the Court **DENIES** Fola's Motion to Dismiss.

## I. BACKGROUND

This case is but one in a series of actions filed in this Court by Plaintiffs.[2] With an interest in Appalachian ecosystems, Plaintiffs have brought various suits alleging violations of environmental laws and regulations. *See e.g.* Compl., *OVEC v. Fola Coal Co., LLC*, No. 2:13-5006, ECF No.1; Compl., *OVEC v. Fola Coal Co., LLC*, No. 2:13-21588, ECF No. 1 (consolidated with Case No. 2:13-16044); Compl., *OVEC v. Pocahontas Land Corp.*, No. 3:14-11333, ECF No. 1; Compl., *OVEC v. Fola Coal Co., LLC*, No. 2:15-1371, ECF No. 1; Compl., *OVEC v. Southeastern Land, LLC*, No. 3:18-77, ECF No. 1. Indeed, Plaintiffs have filed a fair portion of these actions against Fola. *See id.* These parties are neither strangers to each other, nor this Court.

In these actions, Plaintiffs have alleged violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (the "Clean Water Act") and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.* ("SMCRA"). *See id.* Plaintiffs have claimed that companies, including Fola, have discharged pollutants into waters adjacent to current or former mining sites. This release of polluting substances, claims Plaintiffs, has violated permits issued to these companies under the Clean Water Act and SMCRA.

Although generally describable as environmental pollution lawsuits, the precise environmental focus of Plaintiffs' actions has changed over the years. In years past, Plaintiffs alleged violations of the relevant permits and law because of the release of an excess amount of

---

[2] Although not all of the plaintiff parties have been a part of all of the similar environmental suits before this Court, many of the plaintiff parties have remained the same throughout these cases. Most notably, the Ohio Valley Environmental Coalition ("OVEC") has been a mainstay plaintiff in the various actions.

selenium, a pollutant that affects the water quality of streams and waterways. *See* Compl., *OVEC v. Fola Coal Co., LLC*, No. 2:12-3750; *see generally OVEC v. Fola Coal Co., LLC*, No. 2:12-3750, 2013 WL 6709957 (S.D.W. Va. Dec. 19, 2013). However, since that time, Plaintiffs' concern has shifted from selenium discharge to the release of ionic pollutants that lead to increased conductivity of the waters. *See Compl.*, ECF No. 1; Compl., *OVEC v. Fola Coal Co., LLC*, No. 2:13-21588; *OVEC v. Fola Coal Co., LLC*, 120 F.Supp.3d 509, 511, 513-16 (S.D.W. Va. 2015) (adjudicating case No. 2:13-21588); *OVEC v. Fola Coal Co., LLC*, No. 2:15-1371, 2017 WL 1276059, *8 (S.D.W. Va. Apr. 4, 2017).

This case echoes the theme of these more recent cases. Plaintiffs allege that Fola has discharged, and continues to discharge, ionic pollutants in violation the Clean Water Act ("CWA") and Fola's permits issued under both the CWA and the SMCRA. Specifically, Plaintiffs allege these discharges emanate from two mines owned by Fola: Surface Mine No. 4A and Bullpen Surface Mine. *Compl.*, ¶ 3. These discharges, according to Plaintiffs, have impaired waters adjacent to these mines. Pollutants from the Surface Mine No. 4A have allegedly flowed into Right Fork, a tributary of Leatherwood Creek; pollutants from the Bullpen Surface Mine have allegedly flowed into Bullpen Fork, a tributary of Right Fork. *Id.* at ¶¶ 41-66.

Plaintiffs focus upon certain sources of discharge within each of the mining sites. With regard to the Surface Mine No. 4A, Plaintiffs claim that Outlets 022 and 023 have discharged, and are discharging, pollutants into Right Fork, in violation of Fola's permits WV1013815 (permit under CWA provisions) and S200502 (Surface Mining Permit). *Id.* at ¶¶ 41-42, 51, 66, 87. Concerning the Bullpen Surface Mine, Plaintiffs assert that Outlets 001 and 009 have discharged, and are discharging, those same pollutants into Bullpen Fork, in violation of Fola's permits WV1017934 and S200798. *Id.* at ¶¶ 57-58, 66, 87.

In its currently pending Motion to Dismiss in this matter, Fola does not directly challenge the substance of Plaintiffs' allegations. Instead, Fola claims that Plaintiffs' claims are barred because, in essence, Plaintiffs have already swung and missed during their previous at-bats to challenge Fola's discharges from both the Surface Mine No. 4A and the Bullpen Surface Mine.

Fola correctly notes that Plaintiffs have alleged violations concerning discharges from both of those mines in two previous suits, *Fola I* and *Fola II*. In the first, filed on July 26, 2012, Plaintiffs sued Fola over selenium discharges from, among other sites, the Surface Mine No. 4A and the Bullpen Surface Mine. *OVEC v. Fola Coal Co., LLC* ("*Fola I*"), No. 2:12-3750, 2013 WL 6709957, at *2. At issue were the selenium discharges from Outlets 022, 023, and 027 at the Surface Mine No. 4A, and Outlet 009 at the Bullpen Surface Mine. The alleged violations took place from July 2008 through March 2012. *Ex. 2 Def.'s Mem. in Supp. of Mot. to Dismiss*, ECF No. 10-2, at App. A & B. After a finding of liability, the parties entered a Consent Decree that resolved the Plaintiffs' claims of violations contained within their complaint. *Ex. 4 Def.'s Mem. in Supp. of Mot. to Dismiss*, ECF No. 10-4, at ¶ 33. However, the Consent Decree expressly resolved only those claims of violations, "through the Effective Date of [the] Decree." *Id*. The Court entered the Consent Decree on February 2, 2015, rendering the decree effective on that same day. Therefore, that suit, No. 2:12-3750, adjudicated only the selenium violations from July 2008 through February 2, 2015.

By the time of the second suit, Plaintiffs had advanced beyond targeting selenium discharges, and had zeroed in on ionic pollutants and conductivity. This second suit, *Fola II*, concerned only the Surface Mine No. 4A. Filing the original complaint on August 8, 2013, Plaintiffs alleged that Fola had violated its permits during the period from September 2007 through the date of the Complaint, by discharging ionic pollutants from, among other sources, Outlets 022,

023, and 027 at the Surface Mine No. 4A. *Ex. 3 Def.'s Mem. in Supp. of Mot. to Dismiss*, ECF No. 10-3, at ⁋ 47, 49; *OVEC v. Fola Coal Co., LLC* ("*Fola II*"), 120 F.Supp.3d at 539-41. However, the evidence adduced at trial covered the period until September 2014. *Fola II*, 120 F.Supp.3d at 540. After a bench trial on liability, the Court found that Plaintiffs failed to establish violations regarding Outlets 022, 023, and 027. *Id.* at 543-44. The Court found "that Plaintiffs had not met their burden of proving that discharges from Outlets 022, 023, and 027 cause or materially contribute to biological impairment of Right Fork." *Id.*at 544. Because of this finding, the Court granted judgment as a matter of law in favor of Fola regarding the alleged violations of the permit governing the Surface Mine No. 4A, covering the period from September 2007 until September 2014. *Id.*

Beyond the general finding, this Court's exact rationale in *Fola II* is relevant to the current motion pending before the Court in this case. In *Fola II*, the Court addressed Fola's argument that Plaintiffs had failed to isolate the effects of the discharges from Outlets 022, 023, and 027. *Id.* at 543. As noted by the Court, Outlets 022 and 023 discharge into Right Fork, while Outlet 027 discharges in Cannel Coal Hollow, another tributary of Leatherwood Creek. *Id.* But those were by no means the only outlets affecting Right Fork. This Court noted, "some twelve additional outlets discharge into Right Fork or Cannel Coal Hollow upstream of Plaintiffs' compliance sampling location." *Id.* Citing the testimony of one of Plaintiffs' expert witnesses, Dr. Margret Palmer, the Court found that "Plaintiffs' sampling does not isolate the effect of discharges only from Outlets 022, 023, and 027." *Id.* (citing to the trial transcript).

Further, the Court proceeded to reason that the percentage of flow attributable to Outlets 022, 023, and 027 only accounted for one-eight of the total flow of Right Fork. *Id.* at 543-44. Relying upon the flow reports of both Plaintiffs and the West Virginia Department of

Environmental Protection, the Court found that a one-eighth contribution to the total flow was insufficient to establish a material contribution to the impairment of Right Fork. *Id.* Without additional scientific evidence, the Court could only speculatively connect the outlet discharges to Plaintiffs' sampling locations. *Id.* at 544. Simply, the multitude of contributing flow sources prevented the Court from finding the causal link between those outlet discharges and Right Fork's impairment.

Roughly two years after both the resolution of *Fola I* and the dismissal of the relevant claims in *Fola II*, Plaintiffs filed this action. Plaintiffs are now on their third challenge to discharges from outlets at the Surface Mine No. 4A. More specifically, including this action, Plaintiffs have challenged discharges from Outlets 022 and 023 three times, two of which allege violations due to the discharge of ionic pollutants leading to conductivity issues in Right Fork.

This action constitutes Plaintiffs' second challenge to discharges from the Bullpen Surface Mine, but this is the first time Plaintiffs have alleged conductivity issues due to discharges from that mine's outlets. But, Plaintiffs have never before alleged violations due to discharges from Outlet 001 of Bullpen Surface Mine, even though *Fola I* concerned selenium output from Outlet 009.

Having briefly chronicled the previous two rounds between these parties, and provided a basic description of this action, the Court will proceed to the heart of the question confronting it: Are Plaintiffs claims, or parts of their claims, barred because they have been, or could have been, argued and have already been decided? As explained below, the Court will allow Plaintiffs to continue with their claims due to the sufficient material differences.

## II. STANDARD OF REVIEW

Typically, to overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must state plausible claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Further, the Court accepts the factual allegations in the complaint as true. Those allegations, however, "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotations and citations omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). Finally, a court must also "draw[ ] all reasonable factual inferences from those facts [alleged] in the plaintiff's favor . . . ." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (internal quotations omitted) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations omitted)).

Unlike the usual 12(b)(6) motion, Fola bases its Motion to Dismiss solely upon *res judicata*. *Mot. to Dismiss*, ECF No. 9. The Fourth Circuit has confirmed the appropriateness of resolving *res judicata* issues on a motion to dismiss. *See Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citing *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1967)). But, in considering whether *res judicata* precludes an action, the issue must "clearly appear[] on the face of the complaint." *Id*. (quoting *Richmond, Fredericksburg & Potomac R. Co. v. Frost*, 4 F.3d 244, 250 (4th Cir. 1993)). Despite the facial clarity requirement, the Court "may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Id.* (citations omitted).

### III. DISCUSSION

Fola's *res judicata* arguments breaks down upon two lines of demarcation. First, there is the separation based upon the relevant mine: the Surface Mine No. 4A and the Bullpen Surface Mine. Second, Fola divides its reasoning between preclusion doctrines: claim preclusion and issue preclusion. Fola asserts that claim preclusion bars Plaintiffs' claims regarding both the Surface Mine No. 4A and the Bullpen Surface Mine. Additionally, Fola contends that issue preclusion prevents Plaintiffs from proceeding with their Surface Mine No. 4A claims.

Because the previous actions at issue were brought in federal court, federal *res judicata* rules govern the analysis. *Andrews*, 201 F.3d at 524; *Covert v. LVNV Funding, LLC*, 799 F.3d 242, 245-46 (4th Cir. 2015). *Res judicata* principles counsel that "a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *In re Varat Enters., Inc.*, 81 F.3d at 1314-15 (citations omitted). As a broader notion, *res judicata* encompasses two distinct but related concepts: claim preclusion and issue

preclusion.[3] *See id.* at 1315. Claim preclusion bars subsequent litigation of claims arising from the same cause of action that has been actually adjudicated, or that could have been adjudicated in an earlier action. *Id.* (citing *Nevada v. United States*, 463 U.S. 110, 129-30 (1983)); *Covert*, 779 F.3d at 246. Issue preclusion, on the other hand, is a distinct and narrower concept. *Id.* Under issue preclusion, once a court actually and necessarily determines an issue, that determination is conclusive in subsequent litigation based on different causes of action that involve the same parties. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Both concepts serve to protect litigants from the burdensome task of litigating the same thing again, thereby promoting judicial economy and preventing needless litigation. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-29 (1971)).

To ensure clear and orderly analysis, the Court will first address the claim preclusion arguments concerning both mines. Next, the Court will discuss the question of issue preclusion regarding the Surface Mine No. 4A claims.

### A. Claim Preclusion

Fola argues that the Court should dismiss Plaintiffs' claims because Plaintiffs have already had their chance to assert these claims. Fola claims that both mines targeted by Plaintiffs in this action, Surface Mine No. 4A and Bullpen Surface Mine, have been the subject of previous suits brought by Plaintiffs before this Court, *Fola I* and *Fola II. Def.'s Mem. in Supp. of Mot. to Dismiss*, at 14-15. Further, Fola contends that the claims currently advanced by Plaintiffs are based upon both the same law and essentially "the same on-going conditions arising from wholly past mining

---

[3] Issue preclusion is often also referred to as "collateral estoppel." *See In re Varat Enters., Inc.*, 81 F.3d at 1315 n.5 (explaining that just as *res judicata* has been used as a synonym for claim preclusion, courts use collateral estoppel and issue preclusion to describe the same concept).

operations" as those at issue in *Fola I* and *Fola II*. *Id.* at 4. As a result, Plaintiffs' current efforts, according to Fola, should be barred because Plaintiffs are "taking a second bite at the apple." *Id.* at 5.

In order to prevail with its argument on claim preclusion, Fola must establish three elements: "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (quoting *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) (internal quotation marks omitted)). However, in this case, the parties only dispute the second element, the identity of the causes of action. The parties appear to agree that neither the finality of the judgment, nor the identity of the parties are an issue.

In the Fourth Circuit, to determine whether the cause of action in a later suit is the same as that of an earlier suit, courts must apply the "transactional approach." *Id.* at 1058. Under this approach a court should decide whether "the new claim arises out of the same transaction or series of transaction as the claim resolved by the prior judgment." *Id.* (internal quotation marks omitted) (quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). Although the standard is clear, "no simple test exists to determine whether cause of action are identical for claim preclusion purposes, and each case must be determined separately within the conceptual framework of the doctrine." *Pittston Co. v. U.S.*, 199 F.3d 694, 704 (4th Cir. 1999). Within that framework, a "transaction" generally "connotes a natural grouping or common nucleus of operative fact." *Id.* (internal quotation marks omitted) (quoting Restatement (Second) of Judgments § 24 cmt. b.). The Fourth Circuit also directs that courts must "balance the interests of the defendant and of the courts in bringing litigation to a close against the interest of the plaintiff in not being denied the right to

prosecute a valid claim." *Id.* When weighing the factors, a court should consider, among various factors, the temporal relationship between the claims. *See id.*

### 1. Surface Mine No. 4A

Fola argues that Plaintiffs' claims regarding Surface Mine No. 4A, specifically Outfalls 022 and 023, are claim precluded. Fola contends that Plaintiffs' allegation that it has discharged ionic pollutants in violation of the applicable permits, from January 2015 until the present, involves the same "transaction" has this Court has addressed in *Fola I* and *Fola II*. *Def.'s Mem. in Supp. of Mot. to Dismiss*, at 10-13.

Under Fola's construction of the factual circumstances, the discharges arose from the former mining activity surrounding the outfalls. *Id.* at 12. Indeed, Fola submits that the mining activity that led to these discharges had been completed at the time of both *Fola I* and *Fola II*. Because no other mining has taken place on that land since the previous lawsuits, Fola contends that "the on-going discharges are the product of a completed action." *Id.* at 12. As such, no "new wrong" exists, rendering this matter the same "transaction" that was adjudicated in the other *Fola* matters.

In making its argument, Fola relies upon two cases addressing claims under the Resource Conservation and Recovery Act ("RCRA"). One of those cases, *Supporters to Oppose Pollution, Inc. v. The Hertiage Group*, arose in the Seventh Circuit Court of Appeals. 973 F.2d 1320 (7th Cir. 1992) ("*Supporters*"). In *Supporters*, the Seventh Circuit reviewed a District Court's order granting a motion to dismiss. *Supporters*, 973 F.2d at 1323. A citizens group had filed an action against a company under the RCRA. *Id.* at 1322-23. The group claimed that a lender of a former landfill operating company should be responsible for funding the cleanup of the landfill. *Id.* The group asserted that the landfill presented an "imminent and substantial endangerment to health or

the environment," thus entitling the group to relief under RCRA. *Id.* at 1325. After a handful of judicial actions against the Heritage Group, the defendant lender, the district judge dismissed the suit based upon, among other reasons, *res judicata*. *Id.* at 1322-23.

The plaintiffs in *Supporters* agreed that the landfill, which had closed prior to the commencement of series of suits, had no new hazardous deposits. *Id.* at 1323. However, the plaintiffs contended that despite the lack of new action, the risk continued. *Id.* Where the risk continued, argued the plaintiffs, *res judicata* should not operate to insulate the defendant. *Id.* 1323-24.

The Seventh Circuit, affirming the District Court, disagreed with the plaintiffs, and concluded that *res judicata* properly barred their suit. *Id.* at 1325-27. The court found that the plaintiffs knew of the on-going releases at the time of their other suits. *Id.* at 1326. Additionally, the court concluded that the evidence of an additional, continuing threat did not present evidence of a "new wrong," and instead only showed evidence of a "new injury." *Id.* Applying claim preclusion, the court provided that no new conduct had occurred that would permit the plaintiffs to escape *res judicata*. *Id.* at 1326-27. In essence, the court found that the plaintiffs did bring, or could have brought, claims regarding the same factual scenario—the threat posed by former landfill discharges—addressed in the previous suits. *Id.* Because of that finding, the Seventh Circuit concluded that the plaintiff's claims were precluded. *Id.* at 1327.

Fola maintains that the Seventh Circuit's decision in *Supporters* should guide this Court to reach similar outcome regarding *res judicata* in this case. Fola argues that, as in *Supporters*, Plaintiffs in this case have brought another suit, complaining about on-going discharges, without alleging any additional mining conduct. *Def.'s Mem. in Supp. of Mot. to Dismiss*, at 12-13; *Def.'s Reply*, ECF No. 13, 7-8. From Fola's perspective, where no additional mining activity has taken

place, the on-going discharges are part of the same "transaction," and thus, preclusion is appropriate. However, Fola's reliance upon *Supporters*, and RCRA cases generally, fails to convince this Court that Plaintiffs' current claims are part of the same "transaction" that was adjudicated in *Fola I* or *Fola II*.[4]

Whereas, under the RCRA, on-going releases may illustrate additional injury, under the CWA and SMCRA, violation of a permit condition constitutes a discrete wrongful act. *Compare Supporters*, 973 F.2d at 1326 ("Yet ongoing releases were known at the time of the initial suit; they were the principal basis of the claim. That the size of the release is better known now than then takes us nowhere; new evidence of injury differs from a new wrong." (internal citation omitted)), *with The Old Timer, Inc. v. Blackhawk-Centr. City Sanitation Dist.*, 51 F.Supp.2d 1109, 1118 (D. Colo. 1999) ("[E]ach permit violation gives rise to a separate cause of action, however, res judicata [sic] bars only those violations covered by the penalty order." (citation omitted)) *and OVEC v. Patriot Coal Corp.*, No. 3:11-0115, 2011 WL 6101921, at *7 (S.D.W. Va. Dec. 7, 2011) (Chambers, J.) (concluding that claims based upon violations covering different time periods did not trigger a *res judicata* bar); *see also Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 177 F. Supp.2d 1011, 1024 (N.D. Cal. 2001) (rejecting a *res judicata* argument based upon *Supporters*, and providing that "every day of violation constitutes a new violation of the law—i.e., a new wrong—and not just a compounding of injuries cause by earlier violations"); *Chesapeake Bay Found. v. Bethlehem Steel Corp.*, 652 F. Supp. 620, 629 (D. Md. 1987) (providing that violations that occurred later in time, from the

---

[4] For the same reasons that the Court does not find convincing Fola's citation and discussion of *Supporters*, the Court is also not persuaded by Fola's reliance upon *Northern Cal. River Watch v. Humboldt*, 163 Fed. Appx 760 (9th Cir. 2006) and *Northern Cal. River Watch v. Redwood Oil Co., Inc.*, No. C08-02141 WHA, 2008 WL 4601016 (N.D. Cal. Oct. 15, 2008).

same outfalls, were not adjudicated in a previous suit that was resolved by a consent decree). In *Supporters*, the "wrong" committed by the landfill operator emanated from its former operation of the facility, which caused discharges. The discharges were the resulting harm from the wrongful operation. However, in this case, releasing discharges in violation of the permitted standards is, itself, the "wrong." Each "wrong" gives rise to a separate cause of action upon the reporting of each test reflecting impermissible water conditions.

In this case, Plaintiffs have alleged violations, the "new wrongs," beginning in January 2015. *Compl.*, at ¶ 55, 58, 63, 68, 70, 74, 82. Further, these alleged violations only became public upon Fola's filing of its Discharge Monitoring Report ("DMR") on February 18, 2015. *Ex. 1 to Pl.'s Resp.*, ECF No. 12-1. Thus, Plaintiffs' causes of actions for these January 2015 violations accrued on February 18, 2015 with the filing of the DMR. *See U.S v. Hobbs*, 736 F. Supp. 1406, 1409-10 (E.D. Va. 1990) (finding that a cause of action under the CWA accrues when "the reports that document[] those violations [are] filed" (internal alterations original), and noting that it would be "practically impossible" for a party to discover the alleged violations without the report becoming publically available).

The violations addressed and adjudicated by *Fola I* and *Fola II* do not overlap with the alleged violations in this case. In *Fola I*, the Consent Decree covered "the civil claims of Plaintiffs for the violations alleged in the Complaint in this action, filed on July 26, 2012, through the Effective Date of this Decree." *Ex. 4 Def.'s Mem. in Supp. of Mot. to Dismiss*, at ¶ 33. The "Effective Date" of the decree was the "date upon which this Decree is entered by the Court." *Id.* at ¶ 41. This Court entered that consent decree on February 2, 2015. Thus, that consent decree resolved the all of Plaintiffs' accrued claims from July 26, 2012 until February 2, 2015.

In this case, Plaintiffs' earliest claim, asserting violations in January of 2015, had not accrued by the time of the consent decree entry in *Fola I*. Plaintiffs' earliest claim accrued on February 18, 2015. Claim preclusion "does not bar claim that did not exist at the time of the prior litigation." *Meekins*, 946 F.2d at 1057(citation omitted). The Fourth Circuit has cautioned courts that "res judicata [sic] has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action." *Id.* at 1058 (internal quotation marks omitted) (quoting *Crowe v. Leeke*, 520 F.2d 184, 187 (4th Cir. 1977)). Indeed, although Fola continued to commit violations of its permit conditions, each violation constitutes a separate action, supporting a separate claim. Where the February 18, 2015 DMR prompted the accrual of a separate claim, based upon alleged violations in January 2015, Fola committed a "new wrong." Therefore, *Fola I* does not preclude Plaintiffs' claims in this action, regarding Surface Mine No. 4A, and the discharges from the related outfalls.

Likewise, *Fola II* did not encompass the separate wrongs that Plaintiffs seek to remedy in this action. The claims in *Fola II* alleged violations of permit conditions until September 2014. *Fola II*, 120 F.Supp.3d, at 540. Further, November 14, 2014 marked the last date for discovery requests in *Fola II*. *Pl.'s Resp.* at 7-8; *Scheduling Or.*, *Fola II*, ECF No. 13, at 1. As such, *Fola II* does not bar Plaintiffs from asserting claims that arose, at the earliest, on February 18, 2015. *See OVEC v. Aracoma Coal Co.*, 556 F.3d 177, 211 (4th Cir. 2009) ("The fact that the two suits involve challenges to very similar courses of conduct does not matter; a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist . . . ." (internal quotation marks omitted) (quoting *Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322, 328 (1955))).

In sum, Plaintiffs' Surface Mine No. 4A claims in this action are not barred by the previous cases, *Fola I* and *Fola II*. The Court believes this conclusion reflects the Supreme

Court's counsel in *Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322 (1955). In *Lawlor*, the Court found that preclusion under *res judicata* was inappropriate where a course of conduct gave rise to multiple causes of action. *Lawlor*, 349 U.S. at 327-28. The Court further provided that although a "judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist." *Id.* at 328. To permit the already extensive reach of *res judicata* to seize claims that had not yet existed would impart "partial immunity from civil liability for future violations." *Id.* at 329. The Court will not provide Fola with the cover to violate its permits. Instead, the Court must allow Plaintiffs to bring claims for Fola's repetitive choice to commit new and separate wrongs.

### 2. Bullpen Mine

Likewise, Fola argues that Plaintiffs' claims regarding the Bullpen Mine, specifically about the discharges from Outlets 001 and 009, are similarly precluded. However, based upon much of the foregoing discussion regarding the Surface Mine No. 4A claims, the Court finds that Plaintiffs' claims regarding the Bullpen Mine do not arise from the same "transaction" that Plaintiffs have previously litigated.

Fola points to Plaintiffs' *Fola I* claims regarding discharges emanating from the Bullpen Mine. In *Fola I*, Plaintiffs claimed that selenium discharges from Outlet 009 materially contributed to the impairment of Bullpen Fork. In the same consent decree that resolved the selenium discharges from the Surface Mine No. 4A, the parties agreed to a remedial course for the Outlet 009 discharges after the Court had found Fola liable for the impairment contribution attributable to Outlet 009. *Ex. 4 Def.'s Mem. in Supp. of Mot. to Dismiss*, at ¶ 22-23. Therefore, by the terms of the Consent Decree, *Fola I* adjudicated and resolved Plaintiffs' selenium discharge claims for

the Bullpen Mine, from Outlet 009, covering the period from July 2008 until the effective date of the decree, February 2, 2015.

Based upon what was available at the time of *Fola I*, Fola asserts that Plaintiffs could have or should have known about any conductivity issues involving the Bullpen Mine. As such, Fola contends that Plaintiffs have missed their chance to assert conductivity claims now. And, because no additional mining activities have taken place on the Bullpen Mine, no "new wrongs" have occurred. In essence, Fola recycles its argument about the Surface Mine No. 4A for the Bullpen Mine. The Court disagrees with it here as it did in the discussion of the Surface Mine No. 4A.

As noted above, the Court finds that the occurrence of additional discharges in violation of permit conditions constitutes a "new wrong." *See supra*, p. 13-15. To find otherwise would effectively insulate polluters from any liability after one successful round of litigation. Given the purpose of these environmental regulatory schemes reflected in the CWA and SMCRA, the Court will not permit "partial immunity from civil liability for future violations." *See Lawlor*, 349 U.S. at 329; *see also* 33 U.S.C. § 1251 (reflecting Congress' goals and statement of policy for the CWA); 30 U.S.C. § 1202 (reflecting Congress' purposes for the SMCRA).

The Court finds that Plaintiffs have brought different causes of actions, from a different transactional nucleus, that have arisen after those adjudicated in *Fola I* and *Fola II*. Accordingly, because claim preclusion does not bar Plaintiffs' claims, they may proceed.[5]

---

[5] Fola submitted its Notice Regarding New Persuasive Authority ("Notice"). ECF No. 17. In that Notice, Fola notified the Court of a case recently decided out of the United States District court for the Western District of Virginia. In *Red River Coal Co. Inc. v. The Sierra Club*, the District Court granted, in part, the defendant company's motion to dismiss based upon *res judicata*. No. 2:17CV00021 & No. 2:17CV00028, 2018 WL 491668, at *1 & 7 (W.D. Va. Jan. 19, 2018). The court found that because the information regarding a claim for unpermitted discharge was available during a previous suit, the plaintiffs were barred from bringing such a claim because they could have, and should have, made it previously. *Id.* at *7. In its Notice, Fola argues that the *Red River* decision should persuade this Court to find that Plaintiffs' claims are claim precluded and

## B. Issue Preclusion

For the first time, Fola argued in its Reply that issue preclusion prevents Plaintiffs from relitigating the issue of "a causal link between discharges from Outlets 022 and 023 and observed downstream water quality impairment." *Def.'s Reply*, at 1. Fola contends that Plaintiffs' failure to demonstrate that Outlets 022 and 023, of the Surface Mine No. 4A, materially contributed to excessive conductivity in Right Fork in *Fola II*, bars Plaintiffs from attempting to establish that same thing in this case. After the Court allowed Plaintiffs to respond to the newly presented argument of issue preclusion in a Surreply, Plaintiffs argued that issue preclusion is inappropriate in this case because the underlying facts have materially changed since *Fola II*. As explained below, the Court agrees with Plaintiffs.

In the Fourth Circuit, district courts are afforded a level of discretion in applying issue preclusion. *See Klein v. C.I.R.*, 880 F.2d 260, 264 (4th Cir. 1989) ("Trial courts are granted broad discretion in the application of collateral estoppel.") (citations omitted); *Arnlund v. Smith*, 210 F.Supp.2d. 755, 772 (E.D.V.A. 2002) ("While issue preclusion is in the broad discretion of the trial court, courts should not apply it if unfairness results.") (citation omitted). As a general concept, "[c]ollateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks omitted) (quoting *Ramsay v. INS*, 13 F.3d 206, 210 (4th Cir. 1994)). But, the party against whom collateral

---

grant its motion. *Def.'s Notice*, ECF No. 17. Plaintiffs responded to Fola's Notice by differentiating the *Red River* factually, and arguing against the adoption of rationale expressed by the District Court in that case. *Pls.' Resp. to Notice*, ECF No. 18. After reviewing *Red River*, the Court finds it neither binding, nor persuasive enough to find that *res judicata* applies in this case. Therefore, *Red River* does not change the Court's conclusion. However, the Court appreciates the diligence of the attorneys in this matter bringing a potentially relevant, new case to the Court's attention.

estoppel is being employed must have had a full and fair opportunity to litigate the issue in the prior adjudication. *Id.* Although the concept of issue preclusion appears straightforward, it presents challenges in application. *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S.Ct. 1293, 1303 (2015).

The party asserting issue preclusion bears the burden of establishing the necessary elements. *See Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1219 & n.79 (11th Cir. 2017) (providing that the party asserting preclusion bears the burden of establishing the elements); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050-51 (9th Cir. 2008) (same); *accord In re Belair 301-50 S.W. Quadrant Commercial Properties, Inc.*, 972 F.2d 338, 1992 WL 200849, at *5 (4th Cir. Aug. 17, 1992) (unpub.); *see also Proctor v. LeClaire*, 715 F.3d 402, 414 (2d. Cir. 2013) (providing that the party seeking to apply issue preclusion has the burden of showing the issues in question are identical); *c.f. Bravo-Fernandez v. U.S.*, 137 S. Ct. 352, 359 (2016) ("We have made clear that '[t]he burden is on the defendant to demonstrate that the issue whose religitation he seeks to foreclose was actually decided' by a prior jury's verdict of acquittal." (internal citations omitted)). The moving party must establish the components:

> (1) the issue sought to be precluded is identical to one previously litigated;
> (2) the issue must have been actually determined in the prior proceeding;
> (3) [the] determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;
> (4) the prior judgment must be final and valid; and
> (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack*, 134 F.3d at 224 (citing *Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994)). The parties disagreement over issue preclusion revolves around whether this case presents the identical issue to that litigated in *Fola II*. Specifically, the Court must decide whether the issue of the material contribution of Outfalls 022 and 023 to the impairment of the water in *Fola II* is identical to the

issue of the material contribution of Outfalls 022 and 023 as presented in this action. Because Fola has failed to demonstrate that the issues are identical, in light of Plaintiffs' assertion that at least some of the outlets active in *Fola II* no longer contribute flow, the Court finds that the issues are not identical.

In addition to the temporal difference between Plaintiffs' current claims and those they made in *Fola II*, the parties' briefing indicates that there has been a substantial change in circumstances involving the outlets feeding into Right Fork. In *Fola II*, this Court granted summary judgment in Fola's favor regarding Plaintiffs' claims regarding conductivity based violations of the permits for Surface Mine No. 4A. *Fola II*, 120 F.Supp.3d at 543-44. Outlets 022, 023, and 027 were at the heart of the claims regarding Surface Mine No. 4A. *Id.* Outlets 022 and 023 discharge into Right Fork, a tributary of Leatherwood Creek, while Outlet 027 discharges into Cannel Coal Hollow, a different, small tributary of Leatherwood Creek. *Id.* at 543. Plaintiffs claimed that the discharges from those outlets contributed to the impairment of Right Fork. *Id.* This Court, however, found that Plaintiffs had failed to present sufficient evidence to meet their burden with regard to those claims.

The Court reasoned that Plaintiffs had not isolated the effects from Outlets 022, 023, or 027, and thus could not meet the material contribution standard. *Id.* at 543-44. In fact, the Court stressed that twelve additional outlets discharged into Right Fork or Cannel Coal Hollow. *Id.* Further, Outlets 022, 023, and 027 only contributed one-eighth of the total flow of Right Fork. *Id.* With so many other potential contributors and such a small percentage of the total flow attributable to the three outlets in question, the Court found that Plaintiffs had failed to "connect the discharges at issue to the area where Plaintiffs performed compliance sampling." *Id.* at 544. To bridge the gap between Plaintiffs' showing and a determination that those outlets materially

contributed to the impairment of the stream "would be little more than non-scientific speculation." *Id.* Refusing to speculate, this Court granted judgment in favor of Fola for those claims.

In this action, Plaintiffs have only brought claims concerning Outlets 022 and 023 of Surface Mine No. 4A. However, Plaintiffs submit that the facts have changed, and are thus unlike the facts in *Fola II*. *Pls.' Surreply*, ECF No. 16, at 3-5. In *Fola II*, this Court found for Fola regarding Outlets 022 and 023 because, in significant part, of the abundance of other potential contributors to the impairment. *Fola II*, 120 F.Supp.3d at 543-44. But, at the time of the alleged violations at issue here, Plaintiffs claim that the upstream outfalls "had no flow or were not constructed during [the time of the currently alleged violations]." *Pls.' Surreply*, at 3. Thus, Plaintiffs argue that the circumstances have materially changed, preventing a determination that the issue in *Fola II* is identical to the issue of the material contribution to water impairment attributable to Outlets 022 and 023 in this case. The Court agrees with Plaintiffs.

Even if Plaintiffs' current claims present a substantially similar issue, the material change in the circumstances prevents the preclusion of the issue regarding Outlets 022 and 023's material contribution to water impairment from January 2015 to the present. Where a material change has occurred, issue preclusion may be inappropriate. *Montana v. U.S.*, 440 U.S. 147, 157-58 (1979) ("Absent *significant changes in controlling facts* or legal principles since [the first adjudication], or other special circumstance, the [previous court's] resolution of these issues is conclusive here." (emphasis added)). Further, the "changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues." *Id.* at 159 (citations omitted); *see also Folmar v. Harris*, 650 Fed.Appx. 818, 821 (4th Cir. 2016) (unpub. op.) (parenthetically providing that "[A] difference in pertinent facts, sufficient to substantially

change the issues, renders the doctrine of [collateral estoppel] inapplicable," but declining to decide the whether the issues were identical because the plaintiffs had failed to state a claim (internal alterations original) (quoting 18 James W. Moore et al., Moore's Federal Practice § 132.02[2][e] (3d. ed.))). Given this Court's reasoning in *Fola II* and Plaintiffs' assertion that at least some of the upstream outfalls are not contributing to the flow of Right Fork, the Court cannot prevent Plaintiffs from litigating the issue of the material contribution to impairment by Outlets 022 and 023. Otherwise, the Court would likely be preventing Plaintiffs' from receiving a full and fair opportunity to address the issue. *See Khandahar v. Elfenbein*, 943 F.2d 244, 249 (2d Cir. 1991) ("If significant new evidence is uncovered subsequent to the proceeding said to result in an estoppel of the present action, then it cannot be found that a party was afforded a full and fair opportunity to present his case in the absence of that evidence.").

Because the Court's previous adjudication relied upon the relatively minor contributory flow attributable to Outlets 022, 023, and 027, a substantial change in the upstream outfalls would likely affect the consideration of the issue. Thus, the factual changes asserted by Plaintiffs have legal significance in resolving the issue of whether Outlets 022 and 023 have materially contributed to the alleged water impairment.[6] *See U.S. v. Stauffer Chemical Co.*, 464 U.S. 165, 172 (1984) (finding that the factual differences asserted between that case and the previous matter were "of no legal significance whatever in resolving the issue presented in both cases"). Additionally, there is no indication that this change in the upstream outfalls could have been

---

[6] To the extent that Plaintiffs' assertion that there has been a change in upstream outfalls is incorrect, the Court still finds it proper to deny Fola's Motion to Dismiss because this presents an issue of disputed fact. At the motion to dismiss stage, a Court must take as true the allegations made in the complaint. Indeed, Plaintiffs asserted in their complaint that the facts regarding the upstream outfalls had changed. *Compl.*, at ¶ 42. Therefore, taking Plaintiffs' allegations as true, the Court will permit the claims to continue, allowing for appropriate discovery regarding Plaintiffs' claims.

discovered during the discovery process in *Fola II*. *See Klein*, 880 F.2d at 263-64 (providing that a party cannot argue that a change of facts prevents the application of issue preclusion if those changed facts were shown to have been discoverable during the previous matter). Fola has failed to rebut Plaintiffs' legally meaningful contention that the facts have substantially changed.

Consequently, the Court finds that Fola has failed to demonstrate the required identity of the issues. Thus, issue preclusion is inappropriate, and Plaintiffs will be permitted to litigate the alleged violative discharges from Outlets 022 and 023 of Surface Mine No. 4A.

### IV. CONCLUSION

Based upon the analysis provided above, the Court **DENIES** Fola's Motion to Dismiss (ECF No. 9).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:     April 17, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE